Argued and submitted April 18,
reversed and remanded for trial August 18, 1980

# CITY OF PORTLAND,
*Appellant,*
*v.*
# AZIZ,
*Respondent.*

## (No. DA 177184-7908, CA 16522)

615 P2d 1109

Karen H. Green, Assistant Attorney General, Salem, argued for appellant. With her on the brief were James A. Redden, Attorney General, and Walter L. Barrie, Solicitor General, Salem.

Charles J. Merten, Portland, argued the cause for respondent. With him on the brief was Merten & Saltveit, Portland.

Before Gillette, Presiding Judge, and Roberts and Campbell, Judges.

ROBERTS, J.

Gillette, P.J., dissenting opinion.

**ROBERTS, J.**

The defendant was charged with a violation of Portland City Ordinance No. 139931, § 14.24.160, *infra,* which prohibits the unlawful operation of a device designed for sound production. He demurred to the city's complaint, contending *inter alia* that the ordinance is vague and overbroad. The trial court first overruled the demurrer, but on the defendant's motion to reconsider the court sustained the demurrer. The city appeals from the subsequent order dismissing its complaint. ORS 46.810; 138.060(1). We reverse.

The defendant's demurrer had several bases. In addition to the claim that the underlying ordinance is vague and overbroad, the defendant also challenged the specific language of the city's complaint. We will first examine these more specific challenges.

On appeal, as below, the defendant argues that the city's complaint is defective because it was not properly verified.

ORS 133.015 provides that,

"An information or complaint *shall* contain substantially the following:

"* * * * *

"(8) *The verification by the complainant* and the date of the signing of the information or complaint."[1] (Emphasis supplied.)

---

[1] The provisions of the criminal procedure code generally apply to this prosecution for a violation of a Portland City ordinance.

ORS 46.045(1) provides:

"The district court for a county within the boundaries of which there is situated the largest part of a city having a population of more than 300,000 shall have all judicial jurisdiction, authority, power, functions and duties of the municipal court of each such city and the judges thereof with respect to all violations of the charter and ordinances of each such city."

ORS 46.047 provides:

The complaint in this case first alleges the violation of the ordinance. The complaint is signed by a deputy district attorney who swears that the "foregoing complaint is true as [she] verily believe[s]." The defendant insists that this verification is insufficient because it "gives no indication that [it] was made on personal knowledge."

We hold that, at least on the record before us, the verification is adequate. We first note that the defendant makes no attempt to link his objection to the verification to the provisions of the statute setting out the grounds for demurrer, ORS 135.630,[2] and the link is not obvious on the face of the complaint. However, even assuming, without deciding, that an insufficient verification or the failure to verify renders a

---

"When an offense defined by municipal ordinance is tried in district court, it shall be subject to the same statutes and procedures that govern the trial and appeal of a like offense defined by a statute of this state."

ORS 46.800(1) provides:

"(1) District courts are governed in their criminal and quasi-criminal actions and proceedings by the provisions of law regulating such actions and proceedings as provided in ORS chapters 131, 133, 135, 136 and 137, in so far as the same are or can be made applicable in the several cases arising before them, except when other provisions of law provide for a different procedure in district courts for such cases and proceedings, in which event such other provisions shall control; provided, however, that all money required by law to be paid or deposited with a district court shall be paid to or deposited with the clerk of that court."

[2] ORS 135.630 provides:

"The defendant may demur to the accusatory instrument when it appears upon the face thereof:

"(1) If the accusatory instrument is an indictment, that the grand jury by which it was found had no legal authority to inquire into the crime charged because the same is not triable within the county;

"(2) If the accusatory instrument is an indictment, that it does not substantially conform to the requirements of ORS 132.510 to 132.560, 135.713, 135.715, 135.717 to 135.737, 135.740 and 135.743;

"(3) That the accusatory instrument charges more than one offense not separately stated;

complaint subject to demurrer, still there is nothing *on the face* of this complaint which demonstrates that this verification is inadequate.

■     The verification recites the deputy district attorney's belief that the allegations of the complaint are true. *See State v. Harvey,* 117 Or 466, 242 P 440 (1926). While the defendant seems to assume that the deputy district attorney did not know enough to form this belief, this fact, even if true, is not apparent from the face of the complaint. The verification of the city's complaint did not render the complaint subject to demurrer.[3]

The complaint filed against the defendant reads as follows:

"The above-named defendant is accused by this complaint of the offense of UNLAWFUL OPERA-TION OF SOUND PRODUCING DEVICE committed as follows:

"The said defendant, on or about June 4, 1979 within the corporate limits of the said City of Port-land, Oregon, did unlawfully and knowingly permit the use and operation of a device designed for sound

"(4) That the facts stated do not constitute an offense;

"(5) That the accusatory instrument contains matter which, if true, would constitute a legal justification or excuse of the offense charged or other legal bar to the action; or

"(6) That the accusatory instrument is not definite and certain."

[3] We also note that this action could have been commenced by the filing of a district attorney's information. ORS 131.005(9)(a) provides that,

"(9) 'District attorney's information' means a written accusation by a district attorney and:

"(a) If filed with a magistrate to charge a person with the commis-sion of an offense, other than an offense punishable as a felony, serves both to commence an action and as a basis for prosecution thereof; * * *"

ORS 135.715 provides:

"No accusatory instrument is insufficient, nor can the trial, judg-ment or other proceedings thereon be affected, by reason of a defect or imperfection in a matter of form which does not tend to the prejudice of the substantial rights of the defendant upon the merits."

production between the hours of 10:00 p.m. and 7:00 a.m. so as to be plainly audible within a dwelling unit which is not the source of the sound, * * *.

"* * * * *."

The defendant also demurred to the complaint on the basis that it was too general and did not inform him as to the "* * * cause of the accusation against him * * *." Or Const, art I, § 11.[4]

The complaint filed against the defendant is in the language of the ordinance. The Supreme Court has observed that,

"'In an indictment for an offense created by statute, it is usually sufficient to describe the offense in the words of the statute. * * *'"

*State v. Sanders,* 280 Or 685, 688, 572 P2d 1307 (1977), quoting from *State v. Smith,* 182 Or 497, 502, 188 P2d 998 (1948).

We hold that this complaint is sufficient. In *State v. Shadley/Spencer/Rowe,* 16 Or App 113, 120, 517 P2d 324 (1973), we noted that, with the advent of criminal discovery[5] and with other statutory changes,

---

[4] Article I, section 11, of the Oregon Constitution provides: "In all criminal prosecutions, the accused shall have the right * * * to demand the nature and cause of the accusation against him. * * *"

The defendant also relies on ORS 132.550(7), which provides that an indictment shall contain substantially:

"(7) A statement of the acts constituting the offense in ordinary and concise language, without repetition, and in such manner as to enable a person of common understanding to know what is intended * * *."

"* * * The 'definite and certain' requirements of ORS 135.630(6) for a complaint have been interpreted as being the same as those for indictments. ORS 132.550(7). *State v. Nussbaum,* 261 Or 87, 91, 491 P2d 1013 (1971); *State v. Johns,* 20 Or App 149, 151, 531 P2d 282 (1975) * * *." *State v. Thompson,* 40 Or App 461, 595 P2d 842 (1979).

[5] The pretrial discovery provisions "* * * are applicable to all criminal prosecutions in which the charging instrument has been brought in a court of record." ORS 135.805(1).

an accusatory instrument is now "* * * merely a formal method of initiating criminal proceedings and identifying the name of the crime that the accused is alleged to have committed. * * *"

> "In light of the present criminal procedure code the accusatory instrument has lost much of its historical significance as a means of notifying defendant of the crime charged. * * * As a result, the trend in Oregon has been to require less specificity in the accusatory instrument. *See State v. Keys,* 25 Or App 15, 548 P2d 205 *rev den* (1976). * * * If the complaint, read in conjunction with the statutory definition of the terms used, informs the defendant of the elements of the offense with which he is charged it is sufficient."

*State v. House,* 37 Or App 131, 133, 586 P2d 388 (1978); *State v. Thompson,* 40 Or App 461, 595 P2d 842 (1979).[6]

Having held that this specific complaint is sufficient, we now turn to the question of whether the complaint is invalid because it is based on a vague or overbroad ordinance.[7] The ordinance, § 14.24.160 provides:

---

[6] The defendant claims that the "*Shadley/Spencer/Rowe* rationale was repudiated" in *State v. Sanders, supra.* In *Sanders,* the Supreme Court held that a burglary indictment was not definite and certain unless it specified the defendant's intent — that is the crimes which he intended to commit when he made his unlawful entry. *See* ORS 164.215. *Sanders* did not "repudiate" *Shadley/Spencer/Rowe.* In *Sanders,* the court agreed that,

> "In some instances the availability of discovery can remedy a deficiency in the specificity of the indictment; for example, *State v. Shadley/Spencer/Rowe [supra] * * * [failure to name the person to whom drugs furnished] * * *." 280 Or at 690.

*Sanders* simply recognized that in certain limited situations discovery would not supply the missing information. The defendant's intent is a fact which would only rarely appear in a witness' statement. The precise nature of a noise disturbance is a fact which would be detailed in statements.

[7] The defendant relies on the First Amendment to the United States Constitution. He does not rely on Article I, section 8, of the Oregon Constitution.

"It is unlawful to operate or permit the use or operation of *any device designed for sound production or reproduction, including, but not limited to any radio, television set, musical instrument, phonograph, loudspeaker, bell or chime,* in such a manner as to cause a noise disturbance as defined in Section 18.04.040(15) or *to operate or permit the operation of any such device between the hours of 10:00 p.m. and 7:00 a.m. so as to be plainly audible within any dwelling unit which is not the source of the sound;* or to operate any such device on public property or on a public right-of-way so as to be plainly audible fifty feet or more from such device provided that a person operating any such device in a city park pursuant to a permit granted by the commissioner in charge of the park bureau shall be in violation only if the device is plainly audible at any point along the park boundary. Violation of this section shall be punishable by a fine of up to five hundred ($500.00) dollars." (Emphasis supplied.)

The parties agree that "plainly audible sound" is defined in § 18.04.040(21) as:

"Any sound for which the information content of that sound is unambiguously communicated to the listener, such as, but not limited to understandable spoken speech, comprehension of whether a voice is raised or normal, or comprehensible musical rhythms."

Vagueness and overbreadth are intertwined issues. However, disentangling the two to the extent possible, we will first consider the vagueness of the ordinance. We hold that it is not unconstitutionally vague.

"Due process requires that penal statutes provide an adequate basis for judicial determination of whether particular conduct is criminal. The statute must establish a standard for the trial court's decision whether to submit a case to the jury and it must provide a framework for the jury's determination of guilt or innocence. If the terms of a statute are so elastic that the determination of guilt or innocence in individual prosecutions must necessarily be ad hoc,

the statute is unconstitutionally vague. *State v. Hodges,* 254 Or 21, 25, 27-28, 457 P2d 491 (1969); *State v. Sanderson,* 33 Or App 173, 176-77, 575 P2d 1025 (1978).

"A determination of whether a statute is void for vagueness necessarily involves questions of degree. The legislature need not define an offense with such exactitude that a person could determine in advance whether specific conduct in all possible factual circumstances will be found to be an offense. *State v. Samter,* 4 Or App 349, 352, 479 P2d 237 (1971). The standard need not be so exact that persons affected by it will never be required to hazard their freedom upon a correct assessment of the manner in which a jury will resolve a question of degree. *State of Oregon v. Wojahn,* 204 Or 84, 137, 282 P2d 675 (1955). * * *." *State v. Williams,* 37 Or App 419, 422-23, 587 P2d 1049 (1978).

■ While we recognize that "* * * statutes impinging upon First Amendment rights will be strictly tested * * *," *State v. Hodges,* 254 Or 21, 26, 457 P2d 491 (1969), we find that this ordinance passes that test.

■ The defendant argues that the ordinance applies to the unamplified human voice, or at least that it is not clear whether the ordinance applies to unamplified speech. We disagree. A human voice is not a "device designed for sound production or reproduction" akin to a "radio, television set, musicial instrument, phonograph, loudspeaker, bell or chime * * *." This portion of the ordinance is clear.

The defendant also asserts that the ordinance provides no standard to guide the exercise of judicial discretion, claiming that the ordinance is subjective. The defendant describes a variety of hypothetical situations in which the application of the ordinance varies with the construction of neighboring "dwelling units" and the sensitivity of their occupants.

■ The fact that an ordinance or statute may apply differently in different situations does not render it void. Few laws apply with mathematical precision. Whether a sound can be plainly heard in another dwelling during certain specified hours is an adequate standard to guide a judge and jury. The fact that the necessary volume of sound will differ depending upon whether the neighboring dwelling is well-insulated or flimsy, and upon whether it is a hot summer night or the midst of rainy November does not mean that the ordinance is vague. Flexibility is not equivalent to vagueness.[8]

■ The defendant next attacks the definition of "plainly audible sound." While this definition is not a model of clarity, we find that it is not void for vagueness. Two of the examples of "sound for which the information content * * * is unambiguously communicated" are clear: "understandable spoken speech" and "comprehensible musical rhythms." As the defendant notes, the difficulty lies in reconciling the example of "understandable spoken speech" with "comprehension of whether a voice is raised or normal." However, as we read the ordinance, the examples are compatible. The second example, "whether a voice is raised or normal," applies in situations where volume is the only "information content;" for example, being able to tell that the amplified voice emanating from one's neighbor's television set is screaming.

We find that the ordinance is not unconstitutionally vague. *See also Grayned v. City of Rockford,* 408 US 104, 92 S Ct 2294, 33 L Ed 2d 222 (1972); *Kovacs v. Cooper,* 336 US 77, 69 S Ct 448, 93 L Ed 2d 513 (1949); *State v. Dorsett,* 3 NC App 331, 164 SE2d

---

[8] The defendant also claims that the ordinance is vague and standardless because other provisions prohibit the making of sounds above specified decibel levels. These alternative provisions do not result in unguided enforcement. If measurement is taken of a sound source, the more specific provisions apply. Section 18.12.030.

607 (1968); *State v. New York Central Railroad Co.,* 37 NJ Super 42, 116 A2d 800 (1955).

We next consider the defendant's claim that the ordinance is overbroad. We note initially that the ordinance, as we have said, only applies to amplified sounds and not to the unamplified human voice. The ordinance only applies during specified hours, from 10:00 p.m. to 7:00 a.m. The ordinance does not regulate the content of amplified speech or other sounds; it only applies to the volume of those sounds.

■ ■ States may place reasonable "time, manner and place" limitations on the exercise of First Amendment rights. For example, a state may "* * *validly limit the manner in which the First Amendment freedoms are exercised, by forbidding sound trucks in residential neighborhoods, *Kovacs v. Cooper [supra],* * * *." *California v. LaRue,* 409 US 109, 117 at n 4, 93 S Ct 390, 34 L Ed 2d 342 (1972).

■ ■ We hold that this ordinance is a valid, reasonable regulation of the time and manner of the exercise of free (amplified) speech. *See also Grayned v. City of Rockford, supra; Haggerty v. Associated Farmers of Calif.,* 44 Cal 2d 60, 279 P2d 734 (1955); *State v. Dorsett, supra;* Annot., "Validity, under Federal Constitution, of Federal, State, or Local Antinoise Laws and Regulations," 36 L Ed 2d 547; Annot. "Public Regulation and Prohibition of Sound Amplifiers or Loudspeaker Broadcasts in Streets or other Public Places," 10 ALR2d 627.

"So long as a legislature does not prescribe what ideas may be noisily expressed and what may not be, nor discriminate among those who would make inroads upon the public peace, it is not for us to supervise the limits the legislature may impose in safeguarding the steadily narrowing opportunities for serenity and reflection. Without such opportunities freedom of thought becomes a mocking phrase, and without freedom of thought there can be no free society."

*Kovacs v. Cooper, supra,* 336 US 77, at 97 (Frankfurter, J., concurring). Freedom of speech is not intended to protect, and indeed is incompatible with, a cacophony.

We hold that the trial court erred in sustaining the defendant's demurrer.

Reversed and remanded for trial.

**GILLETTE, P. J.,** dissenting.

I respectfully dissent from the conclusion of the majority that the city ordinance under consideration in this case is not overbroad. In my view, the ordinance plainly extends its prohibition into areas safeguarded by the First Amendment's concern for freedom of religion.

I begin by recognizing, as does the majority, that "statutes impinging upon First Amendment rights will be strictly tested * * *." *State v. Hodges,* 254 Or 21, 26, 457 P2d 491 (1969). I then turn to the specific language of the ordinance in question which indicates that "it is unlawful to operate or permit the use or operation of any device designed for sound production or reproduction, including, but not limited to any * * * human voice * * * bell or chime * * * or to operate or permit the operation of any such device between the hours of 10 p.m. and 7 a.m. so as to be plainly audible within any dwelling unit which is not the source of the sound. * * *"

One can, without straining the imagination, identify certain manifestations of the exercise of religion which are so plainly forbidden by this ordinance that they cannot be ignored: The sounding of church bells to herald Christmas Day, or the cry of a mullah calling his flock to prayers may occur within the time interdicted by the ordinance. Neither the city, this state, nor, indeed the Congress of the United States is

authorized to enact a criminal statute so far reaching. I submit that this ordinance is at least as unconstitutional as the unlawful burning statute which this Court held to be unconstitutional in *State v. Hayes,* 17 Or App 79, 520 P2d 465 (1974). In that case, we noted that the statute was so broad as to forbid the lighting of a votive candle. Here, in far more flagrant and concrete ways, this ordinance impinges upon fundamental liberty.

I respectfully dissent.