**SHARKEY'S, INC., Plaintiff,**

v.

**CITY OF WAUKESHA, Defendant.**

No. 02–C–618.

United States District Court,
E.D. Wisconsin.

May 22, 2003.

Joan P. Brady, for Plaintiff.

Raymond J. Pollen, Remzy D. Bitar, Milwaukee, WI, for Defendant.

## DECISION AND ORDER

ADELMAN, District Judge.

## I. PROCEDURAL AND FACTUAL BACKGROUND

Plaintiff Sharkey's, Inc. brings this action against defendant City of Waukesha pursuant to 42 U.S.C. § 1983 seeking a declaratory judgment that the City's noise ordinances, sections 9:11(21) and 12:05(10) of its municipal code, are facially unconstitutional. Plaintiff argues that the ordinances violate due process because they are vague and violate the First Amendment because they are not narrowly tailored. Both parties now move for summary judgment.

The facts are undisputed. Plaintiff, licensed as a Class B intoxicating liquor and fermented malt beverage establishment, operates a bar and grill and features recorded music and other forms of entertainment. Section 9:11(21) provides that: "unreasonably loud noise or other conduct which tends to cause a disturbance or unreasonably interferes with the quiet enjoyment of the surrounding neighborhood is prohibited on or about the licensed premises," and section 12:05(1) prohibits "[n]oise of any kind tending to unreasonably disturb the peace and quiet of persons in the

vicinity thereof." (Am. Compl. at 2.) The City has issued citations to plaintiff and its licensed agent alleging violations of the above ordinances. These matters. are pending in the City's municipal court, but the parties have agreed to adjourn them pending disposition of the present case.

## II. DISCUSSION

### A. Summary Judgment Standard and Burden of Proof

■ Summary judgment is required "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). In the present case, there are no disputed issues of fact, and the parties agree that the only issue to be resolved is whether the ordinances are facially unconstitutional.[1]

■ The ordinances implicate First Amendment rights because music is a form of expression and communication. *Ward v. Rock Against Racism,* 491 U.S. 781, 790, 109 S.Ct. 2746, 105 L.Ed.2d 661 (1989). Thus, the burden of establishing constitutionality is on the City. *Wis. Action Coalition v. City of Kenosha,* 767 F.2d 1248,

---

1. Lurking in the background of this case is the issue of whether plaintiff's facial challenge is proper. Where a law is challenged as overbroad, a plaintiff may bring a facial challenge on the ground that it reaches the constitutionally protected expressive activity of parties not before the court, even if the plaintiff's activity could constitutionally be proscribed. However, when the challenge is based on vagueness, the Supreme Court has not made clear when, if ever, a litigant can facially attack a regulation that—whether or not vague as to the litigant's own conduct—would be vague as to some substantial range of conduct that might be engaged in by others. Even in the First Amendment context, the Court has sent mixed signals about whether and when parties may challenge an ordinance

that clearly applies to their conduct on the ground that it would be vague as applied to others. Richard H. Fallon, Jr., Daniel Meltzer and David Shapiro, *Hart & Wechsler's The Federal Courts and the Federal System* 197 (5th ed.2003); *compare Gooding v. Wilson,* 405 U.S. 518, 521, 92 S.Ct. 1103, 31 L.Ed.2d 408 (1972) (suggesting an affirmative answer), *with Broadrick v. Oklahoma,* 413 U.S. 601, 608, 93 S.Ct. 2908, 37 L.Ed.2d 830 (1973) (suggesting a negative answer). In the present case, however, the parties do not address the issue of whether the ordinances properly covered plaintiff's conduct, as opposed to that of parties not before the court, and the City does not argue that plaintiff is barred from bringing a facial challenge. Thus, I need not resolve the issue.

1252 (7th Cir.1985) (stating that when exercise of First Amendment rights may be impaired, burden of establishing constitutionality of law is on its proponent).

## B. Abstention

▮ The City asks me to abstain from exercising jurisdiction over this dispute. A federal court has an obligation to adjudicate cases properly before it, and abstention from the exercise of such jurisdiction should be rare. *Colo. River Water Conservation Dist. v. United States,* 424 U.S. 800, 813, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976). Abstention is justified only where directing the parties to settle the dispute in state court would advance an important countervailing interest. *Id.* However, various abstention doctrines have evolved from Supreme Court decisions, and the City relies on three of them.

### 1. *Younger* Abstention

▮ In *Younger v. Harris,* 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971), the Supreme Court held that absent extraordinary circumstances, federal courts must abstain from interfering with ongoing state criminal proceedings. Over time, a three-part test has emerged for determining whether abstention under *Younger* is appropriate: (1) the state judicial proceeding must be ongoing; (2) the proceeding must implicate important state interests; and (3) there must be an adequate opportunity in the state court proceeding to raise a constitutional challenge. *Trust & Inv. Advisers, Inc. v. Hogsett,* 43 F.3d 290, 294 (7th Cir.1994).

▮ However, states may waive their right to *Younger* abstention. *Ohio Bureau of Employment Servs. v. Hodory,* 431 U.S. 471, 480, 97 S.Ct. 1898, 52 L.Ed.2d 513 (1977) (holding that where a state "vol-untarily chooses to submit to a federal forum, principles of comity do not demand that the federal court force the case back into the state's own system"); *see also Brown v. Hotel & Rest. Employees & Bartenders Int'l Union, Local 54,* 468 U.S. 491, 500 n. 9, 104 S.Ct. 3179, 82 L.Ed.2d 373 (1984) ("Since the State's Attorney General has ... agreed to our adjudication of the controversy, considerations of comity are not implicated, and we need not address the merits of the *Younger* abstention claim."); *Nelson v. Murphy,* 44 F.3d 497, 501 (7th Cir.1995) ("The principal of *Younger* is that a party to a state proceeding affecting important governmental interests must resolve the dispute in the state's preferred tribunal.").

In the present case, plaintiff's counsel has filed an affidavit stating that there is "an informal agreement between counsel for the Plaintiff and for the City of Waukesha that the matters be adjourned pending the result of the facial challenge to the Waukesha noise ordinances pending before the United States District Court for the Eastern District of Wisconsin." (Brady Aff. ¶ 9.) Plaintiff reiterates this point in its brief, stating that "the parties have chosen to defer proceedings in municipal court pending this court's determination of the constitutionality of the ordinances." (Pl.'s Reply Br. at 2). In its reply brief, the City confirms the existence of "an informal agreement" and does not dispute plaintiff's counsel's statement as to its content. (Def.'s Reply Br. at 3.) Further, both parties confirmed the existence of the agreement in a subsequent telephone conference with the court. Thus, I conclude that the City has agreed that this court should decide the issue of the facial constitutionality of the ordinances. Therefore, *Younger* abstention would be improper.[2]

---

2. Because of the agreement, I need not address plaintiff's other arguments against *Younger* abstention, i.e., that its request for federal relief implicates no state interest because the citation proceedings are based on a local ordinance rather than a state statute and

## 2. *Rooker–Feldman* Abstention

 The *Rooker–Feldman* doctrine bars review by lower federal courts of state court judgments. *See Dist. of Columbia Ct.App. v. Feldman,* 460 U.S. 462, 482–86, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983); *Rooker v. Fidelity Trust Co.,* 263 U.S. 413, 415–16, 44 S.Ct. 149, 68 L.Ed. 362 (1923). The doctrine comes into play when there is a prior state court judgment. When a defendant argues that a federal court should abstain from exercising jurisdiction based on *Rooker–Feldman,* the question is "whether the injury alleged by the federal plaintiff resulted from the state court judgment itself or is distinct from that judgment. If the injury alleged resulted from the state court judgment itself, *Rooker–Feldman* directs that the lower federal courts lack jurisdiction." *Zurich Am. Ins. Co. v.Super. Ct.,* 326 F.3d 816, 822 (7th Cir.2003) (internal citation and quotation marks omitted). In the present case, plaintiff alleges that it is suffering ongoing harm resulting from the City's noise ordinances. Plaintiff does not complain of injury resulting from any state court judgment. Thus, *Rooker–Feldman* abstention would be improper.

## 3. *Colorado River* Abstention

 Federal courts may also abstain from deciding cases based on the pendency of a concurrent state court proceeding for reasons of wise judicial administration. *Colo. River Water Conservation Dist.,* 424 U.S. at 817–18, 96 S.Ct. 1236. As previously indicated, the parties in the present case have entered into an agreement to adjourn the proceedings in municipal court until this court has determined the facial

constitutionality of the ordinances. Under these circumstances, the goal of wise judicial administration, which the *Colorado River* doctrine is designed to serve, would not be advanced by abstention. Thus, *Colorado River* abstention will be denied.

## C. Facial Constitutionality of Ordinances

### 1. Due Process Claim

#### a. The Void for Vagueness Concept

 "It is a basic principle of due process that an enactment is void for vagueness if its prohibitions are not clearly defined." *Grayned v. City of Rockford,* 408 U.S. 104, 108, 92 S.Ct. 2294, 33 L.Ed.2d 222 (1972). The void for vagueness doctrine prohibits the enforcement of a law that contains words " 'so vague that [persons] of common intelligence must necessarily guess at its meaning and differ as to its application.' " *Roberts v. U.S. Jaycees,* 468 U.S. 609, 629, 104 S.Ct. 3244, 82 L.Ed.2d 462 (1984) (quoting *Connally v. Gen. Constr. Co.,* 269 U.S. 385, 391, 46 S.Ct. 126, 70 L.Ed. 322 (1926)). Legislation "must articulate terms 'with a reasonable degree of clarity' to reduce the risk of arbitrary enforcement and allow individuals to conform their behavior to the requirements of the law." *Gresham v. Peterson,* 225 F.3d 899, 907 (7th Cir.2000) (quoting *Roberts,* 468 U.S. at 629, 104 S.Ct. 3244). "A statute that 'vests virtually complete discretion in the hands of the police' fails to provide the minimal guidelines required for due process." *Id.* (quoting *Kolender v. Lawson,* 461 U.S. 352, 358, 103 S.Ct. 1855, 75 L.Ed.2d 903 (1983)).

---

are pending in a municipal rather than a state court, *see Special Souvenirs v. Town of Wayne,* 56 F.Supp.2d 1062, 1073 n. 5 (E.D.Wis.1999) (raising question of substantiality of state interest in case involving the enforcement of a civil ordinance vindicating a purely local

rather than state interest), and that the state courts do not provide an adequate forum for resolution of the constitutional issue because the state supreme court previously upheld an ordinance similar to those in the present case.

In determining whether an ordinance is unconstitutionally vague, a court must examine the words of the ordinance and consider interpretations of comparable laws. A court must also keep in mind that, "[c]ondemned to the use of words, we can never expect mathematical certainty from our language." *Grayned,* 408 U.S. at 110, 92 S.Ct. 2294. "[F]lexibility and reasonable breadth" in the language chosen is constitutionally acceptable. *Id.; see also City of Portland v. Aziz,* 47 Or.App. 937, 615 P.2d 1109, 1114 (1980) (stating that flexibility is not equivalent to vagueness). Further, a federal court must " 'consider any limiting construction that a state court or enforcement agency has proffered.' " *Gresham,* 225 F.3d at 908 (quoting *Vill. of Hoffman Estates v. Flipside, Hoffman Estates, Inc.,* 455 U.S. 489, 494 n. 5, 102 S.Ct. 1186, 71 L.Ed.2d 362 (1982)). The Wisconsin Supreme Court has not construed the ordinances at issue in the present case, although it has rejected a void for vagueness challenge to a similar ordinance. *See City of Madison v. Baumann,* 162 Wis.2d 660, 470 N.W.2d 296 (1991).

The practice of striking down a law because it is void for vagueness is not unique to First Amendment jurisprudence but rather is a general principle of constitutional and criminal law. Rodney A. Smolla, *Smolla and Nimmer on Freedom of Speech* § 6.13 (2003). However, the Supreme Court has stated that the vagueness doctrine should be applied with special exactitude where a statute might infringe upon basic First Amendment freedoms. *Grayned,* 408 U.S. at 109, 92 S.Ct. 2294.

Nevertheless, the special exactitude that the Supreme Court applies when the First Amendment is implicated appears to extend primarily to content-based regulations. *See Reno v. Amer. Civil Liberties Union,* 521 U.S. 844, 871–72, 117 S.Ct. 2329, 138 L.Ed.2d 874 (1997) (stating that the Communications Decency Act was con-

tent-based, and therefore its vagueness raised a special First Amendment concern because of its chilling effect on free speech). In practice, the Supreme Court has shown significant deference in reviewing content-neutral legislation promoting the state's " 'substantial interest in protecting its citizens from unwelcome noise.' " *See Ward,* 491 U.S. at 796, 109 S.Ct. 2746 (quoting *Members of City Council v. Taxpayers for Vincent,* 466 U.S. 789, 806, 104 S.Ct. 2118, 80 L.Ed.2d 772 (1984)) (upholding New York City ordinance requiring performers at band shell in Central Park to use City's sound equipment and technician to ensure that musical performances did not disturb surrounding area); *see also Kovacs v. Cooper,* 336 U.S. 77, 79–80, 69 S.Ct. 448, 93 L.Ed. 513 (1949) (rejecting vagueness challenge to city ordinance forbidding "loud and raucous" sound amplification).

Content-based regulations are those that distinguish favored from disfavored speech based on the ideas expressed. *Turner Broad. Syst., Inc. v. F.C.C.,* 512 U.S. 622, 643, 114 S.Ct. 2445, 129 L.Ed.2d 497 (1994). If it is necessary to look at the content of the speech in question to determine whether the speaker violated the regulation, then the regulation is content-based. *Gresham,* 225 F.3d at 905. If not, it is content neutral. The ordinances at issue in the present case are content-neutral because they do not disfavor expression or communication based on content.

Further, the Supreme Court has indicated that laws imposing only civil liability do not require the same high level of clarity as statutes imposing criminal penalties. *Id.* at 908 (citing *Hoffman Estates,* 455 U.S. at 498–99, 102 S.Ct. 1186); *see also Reno,* 521 U.S. at 872, 117 S.Ct. 2329 (stating that vagueness raises special concerns where law in question imposes crimi-

nal penalties and carries with it the opprobrium and stigma of criminal conviction). The ordinances in the present case are civil in nature.

Notwithstanding the above interpretive principles applicable to vagueness challenges, the task of determining when legislation is unconstitutionally vague is itself an indefinite enterprise. *See, e.g., Winters v. New York*, 333 U.S. 507, 524, 68 S.Ct. 665, 92 L.Ed. 840 (1948) (Frankfurter, J., dissenting) (stating that unconstitutional indefiniteness "is itself an indefinite concept"). In evaluating statutes and ordinances to determine whether they are vague, " 'there is no yardstick of impermissible indeterminacy.' " Debra Livingston, *Police Discretion and the Quality of Life in Public Places: Courts, Communities and the New Policing*, 97 Colum. L.Rev. 551, 604 (1997) (quoting John Calvin Jeffries, Jr., *Legality, Vagueness, and the Construction of Penal Statutes*, 71 Va. L.Rev. 187, 196 (1985)).

Commentators have suggested that one of the reasons for the absence of a clear framework for determining when the indefinite reach of laws invites arbitrary and discriminatory enforcement may be that the Supreme Court framed vagueness as a procedural doctrine, but used it to invalidate statutes on implicit substantive grounds. *Id.* at 604–05; *see, e.g.,* Robert C. Post, *Reconceptualizing Vagueness: Legal Rules and Social Orders*, 82 Cal. L.Rev. 491 (1994) (arguing that the Supreme Court used the vagueness doctrine to prevent the police from imposing certain kinds of middle class norms on citizens and citing as an example *Papachristou v. City of Jacksonville*, 405 U.S. 156, 92 S.Ct. 839, 31 L.Ed.2d 110 (1972) (invalidating a vagrancy ordinance classifying "rogues and vagabonds" and others as subject to punishment)); *see also Coates v. City of Cincinnati*, 402 U.S. 611, 616 n. 6, 91 S.Ct. 1686, 29 L.Ed.2d 214 (1971) (striking down ordinance making it a crime for "three or more persons to assemble ... on any of the sidewalks ... and there conduct themselves in a manner annoying to persons passing by," and citing *Kerner Commission Report* for proposition that "alleged discriminatory enforcement of this ordinance figured prominently in the background of the serious civil disturbances that took place in Cincinnati in June 1967").

The lack of clear standards for determining when laws are too indefinite can be seen when one considers ordinances regulating noise. Scholars have expressed different views with respect to the degree of specificity appropriate in such laws. In 1962, the American Law Institute approved within its proposed disorderly conduct section of the Model Penal Code a standard aimed at noise constituting a public nuisance. The model law, from which the ordinances at issue in the present case appear to be derived, prohibits persons from making "unreasonable" noise "with purpose to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof." Livingston, *supra*, at 614 (quoting Model Penal Code § 250.2(1)(b) (1980)). However, in subsequent years, some commentators speculated that it was open to question as to whether the prohibition "could survive a constitutional attack for vagueness." *Id.* (citing Model Penal Code § 250.2(1)(b) cmt. 4 at 347 (1980)).

And, even though the great majority of courts that have reviewed ordinances patterned on the Code have upheld them, there have been some divergent results. Livingston, *supra*, at 614 n. 301; *compare Price v. Indiana*, 622 N.E.2d 954, 966–67 (Ind.1993) (rejecting vagueness challenge to anti-noise ordinance patterned on Model Penal Code), *and People v. Bakolas*, 59 N.Y.2d 51, 462 N.Y.S.2d 844, 449 N.E.2d

738, 739 (N.Y.1983) (per curiam) (same), *and Commonwealth v. Mastrangelo,* 489 Pa. 254, 414 A.2d 54, 58 (1980) (same), *with Langford v. City of Omaha,* 755 F.Supp. 1460, 1462–63 (D.Neb.1989), *appeal dismissed by* 978 F.2d 1263 (8th Cir.1992) (table) (invalidating Model Penal Code-styled prohibition on unreasonable noise as both vague and overbroad).

### b. The Ordinances in Question

■ With the foregoing principles in mind, I turn to the question of whether the ordinances in the present case are void for vagueness. Although the ordinances differ slightly, both focus on noise that is unreasonable. Section 9.11(21) targets licensed premises and prohibits "unreasonably loud noise . . . which tends to cause a disturbance . . . [in] the surrounding neighborhood," and section 12.05(10), a general anti-noise ordinance, prohibits "noise . . . tending to unreasonably disturb . . . persons in the vicinity."

I conclude that neither of the City's ordinances is so indefinite as to violate due process. However indefinite the standard of review may be, the Supreme Court has indicated that, with respect to noise ordinances, the standard is relatively deferential. The Court has said that while "the officials implementing [the noise ordinance] will exercise considerable discretion, perfect clarity and precise guidance have never been required even of regulations that restrict expressive activity." *Ward,* 491 U.S. at 794, 109 S.Ct. 2746; *see also Grayned,* 408 U.S. at 110, 92 S.Ct. 2294 (stating that "we can never expect mathematical certainty in our language"). And in *Kovacs,* the Court rejected a challenge to a noise ordinance forbidding "loud and raucous" sound amplification, stating that while "loud" and "raucous" were "abstract words, they have through daily use acquired a content that conveys to any interested person a sufficiently accurate

concept of what is forbidden." *Kovacs,* 336 U.S. at 79, 69 S.Ct. 448.

In addition, where a challenged regulation is content-neutral rather than content-based and imposes civil rather than criminal penalties, the Supreme Court applies a less exacting standard of precision to the regulation. *See Reno,* 521 U.S. at 871–72, 117 S.Ct. 2329. In the present case, both of the challenged ordinances are content-neutral and impose only civil penalties.

Given this standard of review, the ordinances are constitutional. The word "unreasonably" creates a relatively objective test. *See* Mark A. Gruwell, *The First Amendment Strikes Back: Amplified Rights,* 31 Stetson L.Rev. 367, 379 (2002); *see also State v. McDermott,* 135 Vt. 47, 373 A.2d 510, 514 (1977) (suggesting that "unreasonable noise" connotes an objective standard as distinguished from the subjective "unnecessary noise"). By contrast, in *People v. New York Trap Rock Corp.,* 57 N.Y.2d 371, 456 N.Y.S.2d 711, 442 N.E.2d 1222, 1226–27 (1982), the New York Supreme Court struck down an ordinance prohibiting "unnecessary noise," defined as "any excessive or unusually loud sound or any sound which either annoys, disturbs, injures or endangers the comfort, repose, health, peace or safety of a person." The court held that the ordinance was vague because it "impermissibly would support a conviction on any sound which annoy[ed] another person, for it could rest solely upon the malice or animosity of a cantankerous neighbor or boiling point of a particular person." *Id.* (internal citations and quotation marks omitted). An objective test, on the other hand, helps to guard against the risk of arbitrary enforcement.

Moreover, both Waukesha ordinances include language that provides additional meaning and context. Section 9.11(21) requires that the unreasonably loud noise must also "tend[ ] to cause a disturbance

or unreasonably interfere[ ] with the ... surrounding neighborhood," and under section 12.05(1) the noise must tend "to unreasonably disturb the peace and quiet of persons in the vicinity."

The weight of authority also supports finding the ordinances constitutional. The Seventh Circuit has upheld similar "reasonableness" standards against challenges based on vagueness. *See United States v. Soderna,* 82 F.3d 1370, 1377 (7th Cir.1996) (upholding against vagueness attack language in FACE Act prohibiting "physical obstruction" that "render[s] passage to or from [an abortion clinic or other facility] unreasonably difficult or hazardous" and stating that the word "unreasonably" is "widely used and well understood"); *see also United States v. Woodard,* 376 F.2d 136, 139 (7th Cir.1967) (upholding against vagueness challenge statute stating that a "person commits disorderly conduct when he knowingly ... does any act in such unreasonable manner as to alarm or disturb another and to provoke a breach of the peace"); *see also Karlin v. Foust,* 188 F.3d 446 (7th Cir.1999) (upholding against vagueness challenge Wisconsin abortion statute using term "reasonable medical judgment").

Precedent in this district and in the Wisconsin Supreme Court also indicates that the use of the word "unreasonably" in a noise ordinance is not so vague as to make the ordinance unconstitutional. In *Milwaukee Mobilization for Survival v. Milwaukee County Park Comm'n,* 477 F.Supp. 1210, 1218 (E.D.Wis.1979), the court addressed a vagueness challenge to a provision prohibiting the use of sound amplification devices in a manner that "unreasonably interfere(s) with the use and enjoyment of the park or parkway by the public," and held that the language was not excessively indefinite. And, the state supreme court unanimously upheld against a vagueness challenge a City of Madison

ordinance prohibiting the making of "any noise tending to unreasonably disturb the peace and quiet of persons in the vicinity thereof." *Baumann,* 162 Wis.2d at 665, 470 N.W.2d 296. The court stated that the reasonable-person standard was "one that has been relied upon in all branches of the law for generations," and that it was sufficiently objective to save the ordinance from vagueness. *Id.* at 677, 683, 470 N.W.2d 296.

Although there are cases to the contrary, *see, e.g., Langford,* 755 F.Supp. 1460, and *Dupres v. City of Newport,* 978 F.Supp. 429 (D.R.I.1997), anti-noise ordinances that incorporate a "reasonable person" standard have generally withstood constitutional scrutiny. Gruwell, *supra,* at 367; *e.g., Howard Opera Assocs. v. Urban Outfitters, Inc.,* 322 F.3d 125, 128 (2d Cir. 2003) (upholding noise ordinance prohibiting "unreasonable noise," defined as that which "disturbs, injures or endangers the peace or health of another or ... endangers the health, safety or welfare of the community"); *Reeves v. McConn,* 631 F.2d 377, 386 (5th Cir.1980) (holding that term "unreasonably loud" is not impermissibly vague); *see also Jim Crockett Promotion, Inc. v. City of Charlotte,* 706 F.2d 486, 489 (4th Cir.1983) (same); *People v. Fitzgerald,* 194 Colo. 415, 573 P.2d 100, 102–03 (1978) (holding that term "unreasonable noise" was not vague); *State v. Linares,* 232 Conn. 345, 655 A.2d 737, 743 (1995) (holding that "unreasonable noise" is not vague because unreasonable denotes objectivity based on circumstances); *State v. Garren,* 117 N.C.App. 393, 451 S.E.2d 315, 318–19 (1994) (upholding ordinance because it incorporated objective "reasonable person" standard); *City of Beaufort v. Baker,* 315 S.C. 146, 432 S.E.2d 470, 474 (1993) (upholding ordinance banning "loud and unseemly" noise because term meant "unreasonably loud in the circumstances,"

creating an objective reasonableness test used in many areas of law).

■ Plaintiff argues that in the context of the City's noise ordinances the adverb "unreasonably" adds little to the clarity of the regulations. To a certain extent, plaintiff has a point. Although the concept of reasonableness permeates the law, it provides no assurance that people will understand precisely what level of noise is prohibited under a noise ordinance. This is one reason why ordinances prohibiting unreasonable noise are thought to be difficult to enforce. *See* Kristin L. Falzone, *Airport Noise Pollution: Is There a Solution in Sight*, 26 B.C. Envtl. Aff. L.Rev. 769, 780 (1999). However, due process does not require perfect clarity and precise guidance. *Grayned*, 408 U.S. at 110, 92 S.Ct. 2294. And, as discussed, both Waukesha ordinances include additional language that helps to define the parameters of lawful conduct.

It may be possible to draft noise ordinances that are more precise than the City of Waukesha's. Such ordinances would likely contain decibel limitations as measured from certain distances. Regulations of this type would likely lessen the potential for discriminatory enforcement, although they would not eliminate it, and they might also have other disadvantages. *See* Livingston, *supra*, at 614. However, my task is not to determine the optimal form of a noise ordinance but to assess whether the City's present ordinances are constitutional. I conclude that neither ordinance is so vague that citizens cannot conform their behavior to its requirements or that it vests excessive discretion in the police. Thus, plaintiff's due process claim based on vagueness will be denied.

### 2. First Amendment Claim

■ The Free Speech Clause of the First Amendment made applicable to states and municipalities through the Fourteenth Amendment, *Fiske v. Kansas*, 274 U.S. 380, 47 S.Ct. 655, 71 L.Ed. 1108 (1927), provides that "Congress shall make no law ... abridging the freedom of speech," U.S. Const. amend I. As stated, this provision applies to the ordinances in the present case because music is a form of expression and communication. *Ward*, 491 U.S. at 790, 109 S.Ct. 2746.

■ In analyzing regulations under the First Amendment, it is critical to determine the appropriate level of scrutiny. *Deida v. City of Milwaukee*, 176 F.Supp.2d 859, 864 (E.D.Wis.2001). The standard chosen often determines whether the enactment is constitutional. *Id.* Content-based regulations are presumptively invalid under the First Amendment and are subject to strict scrutiny, while content-neutral restrictions receive lesser scrutiny. *Schultz v. City of Cumberland*, 228 F.3d 831, 840 (7th Cir.2000). Content-neutral regulations receive "intermediate scrutiny" because their purpose is not to proscribe disfavored messages but rather to combat some other perceived evil, with speech burdened as an unintended side-effect. Nevertheless, such "laws by no means receive a free pass under the First Amendment." *Clarkson v. Town of Florence*, 198 F.Supp.2d 997, 1006 (E.D.Wis.2002) (internal quote marks omitted) (citing Smolla, *supra*, § 3.2). This is because a sweeping content-neutral regulation may, in fact, burden more speech than a narrowly tailored content-based regulation. *Id.*

■ The most common example of content-neutral regulations of speech are so-called "time, place or manner" regulations. Such regulations do not regulate *what* is said but merely such matters as *when*, *where* and *how loud*. Smolla, *supra*, § 8.36. Noise ordinances such as the City of Waukesha's fall into the category of time, place or manner regulations. The standard of review applicable to such regu-

lations is that they must be narrowly tailored to effectuate a significant governmental interest and leave open adequate modes of communication. *Ward,* 491 U.S. at 798, 109 S.Ct. 2746; *Clark v. Community for Creative Non–Violence,* 468 U.S. 288, 293, 104 S.Ct. 3065, 82 L.Ed.2d 221 (1984).

Plaintiff does not dispute that the City's interest in protecting its citizens from unwelcome noise is a significant one, but argues that the ordinances under consideration are not narrowly tailored. The requirement of narrow tailoring does not mean that regulations must employ the least restrictive means to vindicate the significant governmental interest. *Ward,* 491 U.S. at 798, 109 S.Ct. 2746. However, when the government could adopt a narrower regulation that would significantly reduce the negative impact on expressive activity without substantially interfering with its legislative goals, it must do so. *Clarkson,* 198 F.Supp.2d at 1009.

Plaintiff fails to show that the ordinances at issue in the present case are not narrowly tailored. While it is true that noise ordinances based on decibel limitations might be more *precise,* such ordinances would not necessarily be more *narrowly tailored.* Whether they were more narrowly tailored would depend on what the decibel limitation was. A very low decibel limit, for example, might restrict substantially more expression than is required to serve the City's interests. Further, such an ordinance might fail to take into account the circumstances—noise that might be tolerable at some times and in some locations might not be at other times and places. *Cf. Woodard,* 376 F.2d at 141–42 (citing *State v. Smith,* 46 N.J. 510, 218 A.2d 147 (1966)) (upholding disorderly conduct statute employing reasonableness standard because persons of ordinary intelligence can comport their behavior with their surroundings). Finally, plaintiff does not explain how an ordinance adopting the "reasonableness" criterion could be more narrowly drawn than the regulations in question and, at the same time, serve the City's interest in protecting its citizens from unwelcome noise. Thus, plaintiff's argument that the City's ordinances violate the First Amendment must be rejected.

### III. CONCLUSION

**THEREFORE, IT IS ORDERED** that the City's motion for summary judgment is **GRANTED,** plaintiff's motion for summary judgment is **DENIED,** and this case is **DISMISSED.**